THE STATE ex rel. ANHEUSER-BUSCH BREWING ASSOCIATION et al. v. EBY, Judge.

In Banc, December 10, 1902.

1. **Prohibition:** SUPREME COURT JURISDICTION.    Under constitution, article 6, section 3, giving the Supreme·Court power to issue "writs of habeas corpus . . . and other original remedial writs," the Supreme Court, though it has no appellate jurisdiction in misdemeanor cases, has power to issue a writ of prohibition to prevent a circuit court from trying certain misdemeanor cases.

2. ————: ————: PLEADING LACK OF JURISDICTION IN LOWER COURT. Prohibition may issue from the Supreme to an inferior court, to prevent the trying of certain cases, though the issue of lack of jurisdiction was not raised or pleaded in the lower court.

3. **Intoxicating Liquors:** BEER COMPROMISE ACT: AMNESTY: ESTOPPEL.   Beer Compromise Act (Laws 1901, p. 181) section 1, provided that the Governor might settle all demands by the State for inspection fees on beer accruing up to a certain date under the beer in-

spection law (R. S. 1899, c. 117, article 4), upon payment into the State Treasury of a certain sum per barrel; and section 2 provided that every person who should comply with the provisions of section 1 should be relieved from all fines and penalties incurred under the beer inspection law up to such date, and barred prosecutions for violation thereof by such persons prior thereto. *Held*, that the act constituted a general amnesty to all complying with its provisions, and that the State was estopped to prosecute for violations of the inspection law covered by such payments.

4. ———: ———: WAIVER: PLEA IN BAR. Since the Beer Compromise Act (Laws 1901, p. 181) constituted an act of general amnesty by the General Assembly, and, as such, was not subject to being waived, it need not be pleaded in bar of a prosecution to which it applies.

5. ———: ———: AMNESTY: JURISDICTION: PROHIBITION. Since the Beer Compromise Act (Laws 1901, p. 181) constituted a general amnesty as to certain offenses, an attempt to try those affected thereby for the barred offenses was beyond the jurisdiction of the court, so as to justify a writ of prohibition from the Supreme Court.

6. ———: BEER INSPECTION LAW: CONSTITUTIONALITY: TAXATION. The beer inspection law (R. S. 1899, c. 117, art. 4, section 7691) provides that a certain fee shall be paid into the State Treasury by manufacturers of beer, for the inspection thereof. Such fees, in the aggregate, would amount to $500,000 per annum more than the expense of the inspection. *Held*, by SHERWOOD, J., BURGESS, C. J., and ROBINSON, J., concurring, that the fee was a tax, and, as such, unconstitutional, as not being levied on a cash valuation, and as being unequal.

7. ———: ———: ———: EQUAL PROTECTION OF LAW. The beer inspection law (R. S. 1899, c. 117, art. 4, sections 7691, 7696) exacted an inspection fee from manufacturers of beer for sale in the State, which those manufacturing beer for export need not pay. *Held*, by SHERWOOD, J., BURGESS, C. J., and ROBINSON, J., concurring, that it was in violation of Constitution United States amendment 14, as denying the manufacturer for domestic use the equal protection of the laws.

8. ———: ———: ———: JURISDICTION: PROHIBITION. *Held*, by SHERWOOD, J., BURGESS, C. J., and ROBINSON, J., concurring that since the beer inspection law (R. S. 1899, c. 117, art. 4) is unconstitutional, criminal proceedings based thereon are without jurisdiction, and afford grounds for a writ of prohibition.

9. **Prohibition:** MULTIPLICITY OF SUITS: ADEQUATE REMEDY. Where

the relators for a writ of prohibition would have been compelled, in case they failed to receive the relief prayed, to defend 1,203 misdemeanor cases, and, if defeated, appeal, at a cost aggregating $12,030, as well as counsel fees, the remedy of submitting to trial, and then appealing, though available, was so inadequate as to justify the application for prohibition.

10. ———: PROCEDURE IN SUPREME COURT. Revised Statutes 1899, section 4450, providing that the proceedings for prohibition shall be by a civil action, in which the moving party shall be plaintiff, does not apply to original proceedings for such remedy in the Supreme Court, the general law on the subject governing there.

## Prohibition.

RULE MADE ABSOLUTE.

*Tapley & Fitzgerrell* and *E. W. Major* for relators.

(1 ) On April 15, 1901, these relators complied with the provisions of an act passed by the General Assembly of the State of Missouri during the session of 1901, known as the "Beer Compromise Act," and paid into the State Treasury for the benefit of the state revenue fund the sum of $191,250, being ten cents on each and every barrel of beer of the capacity of thirty-one gallons and in the same proportion for any other quantity of beer sold for consumption in the State of Missouri after September 20, 1899, and prior to March 19, 1901; said payment of said money includes and pays the inspection fees on all the packages or cases of beer recited in the said 5,000 alleged informations now pending in Pike county, Missouri, against relators. A full compliance with the said Beer Compromise Act is admitted by respondent. Having complied with the requirements and provisions of said compromise act, the State of Missouri can not proceed to prosecute these relators for fines, penalties and forfeitures alleged to have accrued in the way and during the time named in said compromise act. Relators in good faith complied with the provisions of said act and paid the fees therein required to be paid, which in-

cludes and pays inspection fees on the beer described in said informations. The State having induced relators to pay said sum into the State Treasury for the benefit of the state revenue fund and in payment of inspection fees, can not take advantage of its own contract. The State can not lay a snare and pitfall for the citizen and take advantage of its own contract and agreement, after having induced the citizen in good faith to act thereon. (2) Relators are entitled to have the whole matter passed upon in these proceedings and be relieved and protected from the expense, vexation and annoyance of defending in the said 5,000 prosecutions pending against the various relators herein. The prosecutions are without merit. This court has jurisdiction in the issuance of original writs and should grant the equitable relief prayed for, and the temporary or provisional writs, heretofore issued, should be made final and absolute. The prevention of vexatious litigation and a multiplicity of suits constitute a favorite ground for the exercise of equitable jurisdiction. Coal Company v. St. Louis, 130 Mo. 323; Michael v. St. Louis, 112 Mo. 616; Damschroeder v. Thias, 51 Mo. 100; Biddle v. Ramsey, 52 Mo. 153; Carroll v. Campbell, 108 Mo. 550; Swope v. Weller, 119 Mo. 556; State ex rel. v. Wood, 155 Mo. 478; High on Injunctions (3 Ed.), p. 12; Mayor, etc., v. Radecke, 49 Md. 217; Davis v. Fasig, 128 Ind. 271; Rushville v. Gas Co., 132 Ind. 575; Railroad v. Mayor, etc., 54 N. Y. 159; 16 Am. and Eng. Ency. Law (2 Ed.), par. b, 354; 16 Am. and Eng. Ency. Law (2 Ed.), par. 12, 373; Bishop v. Rosenbaum, 58 Miss. 84; Railroad v. Dey, 1 L. R. A. 744; Chicago v. Collins, 49 L. R. A. 408. (3) Respondent's second ground, that there is a defect of parties, in that they should have been styled plaintiffs and defendant rather than relators and respondent is entirely without merit, this court having decided adversely to respondent's contention. (4) As to the third ground of demurrer, that the Supreme Court has no jurisdiction of misdemeanor cases except such derivative jurisdiction as it may acquire by appeal from the

inferior courts of this State: The Supreme Court under our Constitution has a general superintending control over all inferior courts and has power to issue original remedial writs and to hear and determine the same. Its jurisdiction does not depend upon the fact that it would have appellate jurisdiction in the same matter. State ex rel. v. Tracy, 94 Mo. 217; State ex rel. v. Philips, 97 Mo. 341.

*Pearson & Pearson, J. W. Jump* and *J. D. Hostetter* for respondent.

(1) Whenever any errors of an inferior court may be reviewed and corrected by the ordinary mode, as by appeal or writ of error, then the writ of prohibition should not and can not lawfully or rightfully be resorted to. Martin v. Sloan, 98 Mo. 252; State v. Klein, 116 Mo. 259; State ex rel. v. Fox, 85 Mo. 61; State ex rel. v. Anthony, 65 Mo. App. 554; State ex rel. v. Scarritt, 128 Mo. 340; State ex rel. v. Burckhart, 87 Mo. 533; State ex rel. v. Smith, 104 Mo. 422; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. v. Withrow, 108 Mo. 1; State ex rel. v. Railroad, 100 Mo. 59; Postlewaite v. Ghiselen, 97 Mo. 424; Wilson v. Berkstresser, 45 Mo. 283; State ex rel. v. Harrison, 53 Mo. App. 346; State ex rel. v. Valliant, 123 Mo. 524; High on Extra. Remedies, secs. 767, 771; Davison v. Hough, 165 Mo. 561; State ex rel. v. Henderson, 164 Mo. 347; State ex rel. v. Wood, 155 Mo. 445; State ex rel. v. Aloe, 152 Mo. 483; Railroad v. Smith, 154 Mo. 321; State ex rel. v. Withrow, 141 Mo. 79; State ex rel. v. Ross, 136 Mo. 271; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Shannon, 130 Mo. 139; 9 Am. and Eng. Ency. Law (1 Ed.), p. 267. (2) These proceedings in prohibition are erroneously brought in the name of the State of Missouri at the relation, etc., and practically amount to a suit by the State of Missouri against the State of Missouri, seeking to restrain the enforcement of the criminal laws of the State. Under the statute, the moving party should be plaintiff and the

adverse party should be defendant, and this point is specially raised by the demurrer. R. S. 1899, sec. 4450; State ex rel. v. Hirzel, 137 Mo. 449; Railroad v. Wear, 135 Mo. 269.

### PETITION.

The petition in this proceeding, referred to in the opinion, omitting caption and signatures, is as follows:

"Comes now the Anheuser-Busch Brewing Association, Adolphus Busch, George K. Busch and J. D. Bowman and give the court to understand and be informed that the Anheuser-Busch Brewing Association is now and at all the times hereinafter mentioned was a business corporation organized under the laws of the State of Missouri, and located in the city of St. Louis, Missouri, and engaged in said city in the manufacture and sale of beer; that Adolphus Busch, George K. Busch are and at all the times hereinafter mentioned were residents and citizens of the said city of St. Louis and officers of the Anheuser-Busch Brewing Association; that J. D. Bowman is and at all the times hereinafter mentioned was a resident and citizen of the city of Louisiana in Pike county, Missouri.

"That the Honorable David H. Eby is and at all the times hereinafter mentioned was judge of the Tenth Judicial Circuit of the State of Missouri, of which circuit Pike county in said State is a part, and that he is the judge of and presides in the circuit court of said Pike county and as such has taken cognizance and now entertains jurisdiction of 1,203 alleged informations against the relators for alleged violations of the act approved May 4, 1899, 'Creating the office of inspector of beer and malt liquors of the State and providing for the inspection of beer and malt liquors manufactured and sold in this State,' and is about to try these relators as defendants under said alleged informations.

"Relators further give the court to understand and be informed that one John W. Jump who was at the time prosecuting attorney of said Pike county did

on the fifteenth day of March, 1901, file against these relators as defendants 1,203 informations for alleged violations of the act of the Legislature of the State of Missouri, hereinafter referred to.

"That in filing said informations the said John W. Jump, prosecuting attorney of Pike county, at the time used printed blanks and that all of the said 1,203 informations filed by him against these relators are of the same form, substance and tenor, excepting only that they differ in the allegation of the date of the sale of the beer alleged in said informations to have been made, and in the name of the party to whom the beer was alleged to have been sold. That with the exception of the date of the alleged sale and the name of the party to whom the sale was alleged to have been made, said informations were in the following form:" (Here follows information found on page 510 of this volume).

"And the relators further give the court to understand and be informed that the relators, the Anheuser-Busch Brewing Association, Adolphus Busch and George K. Busch have made no sales of beer in Pike county, Missouri, and that they have not nor either of them been guilty of any violation in Pike county, Missouri, of any provision of said act of the Legislature hereinbefore referred to; that said circuit court of Pike county, Missouri, has in fact no jurisdiction of any of the last-named relators or of the supposed charges against them in said several alleged informations and that neither of the said last-named relators made sales or any of them alleged to have been made in the said several informations.

"Relators further give the court to understand and be informed that the said circuit court of Pike county is advised and it appears from the records that the relator J. D. Bowman is not a brewer nor a manufacturer of beer, and that he did not brew or cause said beer described in said informations or any of them to be brewed and was not therefore by law required to cause said beer to be inspected or to pay the inspection

fee or to have or cause a label or certificate of the state inspector of beer and malt liquors to be attached to any of the packages containing said beer or any of it; that under the law as interpreted by this court the inspection of beer is to be made at the place of manufacture and sale, and before the beer is put in packages for sale, and hence it appears to the said circuit court of Pike county from the facts set forth in the informations and record that the alleged offenses of selling uninspected beer, to-wit, the beer described in the said several informations, was and could be committed only in the city of St. Louis, the place of the manufacture of said beer and said J. D. Bowman is not guilty of any offense committed in Pike county, Missouri, and hence the circuit court of said Pike county has no jurisdiction over them and should not take further cognizance of the said causes against them.

''These relators further give the court to understand and be informed that the said alleged informations hereinbefore referred to charged no offense against the said relators or any of them for that the label and certificate of the state inspector of beer and malt products of the State of Missouri, described in the said informations and each count thereof as not being upon the several packages of beer described in said several informations as having been sold by those relators, was not a label or certificate required by law to be placed upon said packages or any of them, and the failure therefore to place such label and certificate as that described in the said several informations upon said packages of beer or any of them did not constitute any offense against the laws of the State of Missouri.

''And the relators give the court further to understand and be informed that from and after the 20th day of August, 1899, at which date said act of May 4, 1899, went into effect, until the 15th day of April, 1901, the validity of said act was contested by the courts and especially in this court as reference to the suit of the State ex rel. v. Wood, 155 Mo. 425, and State v. Bixman, 162 Mo. 1, will show; and during the pendency

of said litigation involving the validity of said act the authority of the beer inspector to inspect and gauge the brewers' product and collect the inspection fee and the liability of the brewers to pay said inspection fee being the points at issue, no inspection of beer was in fact made or attempted to be made by said beer inspector and the State recognized that the inspector could not and he did not during said period inspect beer.

"And the relators further show to this court that after the decision of this court in the case of State v. Bixman, 162 Mo. 1, the General Assembly of the State of Missouri passed an act and the Governor of the State approved the same on April 15, 1901, which act was entitled, 'An Act to authorize the Governor to compromise and settle all demands for inspection fees by the State arising prior to March 19, 1901, under the act approved May 4, 1899, and known as the Beer Inspection Law, and to remit all fines, penalties and forfeitures incurred under said act prior to March 19, 1901, by parties who shall comply with the provisions of this act and to bar all prosecutions not now pending against such parties;' that by said act the Governor of the State of Missouri was authorized and empowered to compromise and settle all demands by the State for inspection fees prior to March 19, 1901, arising under the Act of May 4, 1899, upon payment into the State Treasury to the credit of the state revenue fund of ten cents for each and every barrel of the capacity of thirty-one gallons and in the same proportion for any other quantity of beer sold for consumption in the State of Missouri after September 20, 1899, and prior to March 19, 1901. And it was further provided by said act that every person who should comply with the provisions of section 1 of the said act and pay into the State Treasury on or before the fifteenth day of April, 1901, the sum stated therein upon beer sold for consumption in this State by them during the time stated in said section should be relieved from all fines, penalties and forfeitures incurred by them prior to March 19, 1901, under

the said Act of May 4, 1899, and all prosecutions for such violations of said act prior to March 19, 1901, against the parties who complied with section 1 of said act were thereby barred; provided however, that this act should not apply to nor have any effect upon any prosecutions then pending in any of the courts of this State, but said prosecutions should be disposed of in the same manner as if the said act should not have been enacted.

"And these relators inform the court and show that they complied with the provisions of the said act ·and did on the 15th day of April, 1901, pay into the State Treasury and the State of Missouri accepted in full of all inspection fees for beer sold for consumption in the State of Missouri prior to March 19, 1901, from these relators and others the sum of one hundred and ninety-one thousand, two hundred and fifty dollars, and that said payment of said money includes and pays the inspection fees on all the packages or cases of beer recited in the said 1,203 alleged informations now pending in Pike county, Missouri, against said relators and said inspection fees having been paid by relators and accepted by the State of Missouri on account of the beer recited in said alleged information to have been sold by these relators, the relators are thereby relieved of all fines, penalties and forfeitures arising from a non-compliance with or a violation of said Act of May 4, 1899, if any, and should no longer be prosecuted on any information on account of the same.

"And these relators give the court to understand and be informed that at the time said act hereinbefore referred to approved April 15, 1901, was passed and approved, and at the time the relators paid into the State Treasury and the State accepted and received the fees provided by said act to be paid on account of beer theretofore made and sold in the State without having been inspected, there was no charge of violating the said Act of May 4, 1899, pending against these relators or any of them in the said circuit court of Pike county, Missouri, the said informations now pending against

these relators charging them with no offense against the laws of the State of Missouri, and these relators are therefore protected by and are entitled to all of the benefits of the said so-called compromise act, approved April 15, 1901, and ought not, having fully complied with the provisions of the said compromise act, be further proceeded against on account of any alleged violations of law in the sale of beer for which they paid the inspection fees, as provided in said Act of April 15, 1901, and these relators harassed and annoyed by the vexatious litigation and prosecutions.

"And your relators further give the court to understand and be informed that said beer inspection law being article 4 of chapter 117 of the Revised Statutes of the State of Missouri for 1899 is unconstitutional and void, for the reason that the property therein named and taxed is not taxed in proportion to its value, but is a specific tax and therefore contrary to section 4, article 10 of the Constitution of Missouri; and, is further unconstitutional and void because it imposes a tax in addition to the manufacturers' license tax, and therefore constitutes a double tax for the same time upon the same property contrary to section 8, article 10 of the Constitution of Missouri; and, it further is unconstitutional and void because the fee for inspecting and gauging each gallon of beer, and the fee for labeling each package is a tax, and the same is levied in violation of sections 4 and 8 of article 10 of the Constitution of Missouri; and further is unconstitutional and void because it provides that all beer manufactured in the State shall be inspected and that so much of it as is sold in the State is subject to tax therein imposed and so much of it as is exported out of the State is free of said tax, thus discriminating between the brewer who sells his product in the State and the brewer who exports his product out of the State, contrary to section 3 of article 10 of the Constitution of Missouri; and further violates said section and article because it singles out beer and imposes upon it an additional tax not imposed upon the mer-

chandise of any merchant or the raw material or finished product of any manufacturer in this State other than brewers, and the same is unconstitutional and void; and in violation further of sections 3, 6, 7 and 9 of article 10 of Missouri's Constitution; and, further is unconstitutional and void in that it imposes a tax on the brewer who sells his product in this State and exempts from such tax the brewer who exports his products, thereby denying to the former the equal protection of the law in violation of the fourteenth article of amendment to the Constitution of the United States; and further violates article 5 of the amendments to the Constitution of the United States; and further is unconstitutional and void in that it provides that all beer imported into the State shall be inspected in the package in which it is imported and before it is offered for sale and shall be subject to the same tax imposed upon beer manufactured and sold in the State, thereby violating section 10 of article 1 of the Constitution of the United States; and further is unconstitutional and void in that it violates section 4 of the Bill of Rights of the Constitution of Missouri and is against the law of the land; and contravenes section 53, article 4 of the Constitution of Missouri, and is unreasonable and unjust in its provisions and its enactment was and is beyond the power, authority or jurisdiction of the General Assembly of Missouri under the Constitution and laws of the State; and further is unconstitutional and void in that it provides that one-fourth of the fines and penalties collected shall be paid to the informer and three-fourths into the fund for the construction of public roads and highways in the county in which said offense may have been committed and prosecution begun, contrary to section 2, article 11 of the Constitution of Missouri.

"And your relators further give the court to understand and be informed and show that notwithstanding the foregoing premises the said 1,203 cases under said alleged informations against these relators have been

set for trial in the circuit court of Pike county, Missouri, beginning on the 9th day of June, 1902, and unless prohibited from so doing the said circuit court will proceed with the trial of said causes, and your relators show to the court that it is in the highest degree unjust and oppressive that they should be compelled to appear and defend against each and all of said alleged informations at the said county of Pike and State of Missouri.

"Your relators further show to this honorable court that in proceeding against them or any of them under any or all of the alleged informations the circuit court of Pike county, Missouri, is acting in excess of its jurisdiction and powers and that it is proceeding in grievous abuse of its powers in holding, under the circircumstances hereinbefore recited, these relators, or any of them to defend against all or any number of said alleged informations and to protect your relators against the hardships, injustice and oppression involved in requiring them to defend against all of the said 1,203 alleged informations; under the circumstances hereinbefore set forth your relators implore the aid of this honorable court and pray that they may have a writ of prohibition directed to the said Honorable David H. Eby, judge of the circuit court of Pike county, Missouri, prohibiting him from taking any further cognizance of the said alleged informations or any of them.

"And your relators pray this honorable court to award to them such relief as may be appropriate in the premises and will protect them against the hardships, injustice and oppression of being compelled to make defense against the said alleged informations or any of them."

SHERWOOD, J.—This is a proceeding in prohibition instituted by relators in vacation, before Judge W. C. Marshall of this court, the petition alleging among other things that David H. Eby, Judge of the Tenth Judicial Circuit of this State, had taken cog-

nizance of, and now entertains jurisdiction of twelve hundred and three informations, all of them of similar tenor and effect, a copy of one of them being filed with the petition; and that such informations related to alleged violations of what is known as the "Beer Inspection Law," and charged relators with violation of same, and that unless said Eby, judge as aforesaid, were prohibited, he would proceed to try all of said informations at the June term, 1902, of the Pike Circuit Court, and prays that said Eby be prohibited from taking any further cognizance of said informations or of any of them.

The information above referred to is the following:

"State of Missouri, Plaintiff,

vs.

Anheuser-Busch Brewing Association, Adolphus Busch, George K. Busch and J. D. Bowman, Defendants.

"John W. Jump, prosecuting attorney within and for the county of Pike, in the State of Missouri, under his oath of office informs the court that one J. D. Bowman on or about the 16th day of March, 1900, at and in the county of Pike in the State of Missouri, did then and there unlawfully and willfully sell for the price of two dollars to one B. A. Pappenfort, George Anderson, eight gallons of beer which said beer was then and there contained in a certain package, to-wit, a certain vessel in which beer is usually placed for sale, commonly called one-fourth barrel or keg, containing eight gallons of beer brewed and manufactured in the State of Missouri, which said package containing said beer so sold as aforesaid did not then and there at the time of the said sale thereof have placed upon said package the label and certificate of the said inspector of beer and malt products of the State of Missouri, certifying that said beer contained in said package or one-fourth barrel had then and there been inspected and made from wholesome ingredients, to-wit, made from pure hops or pure extract of hops

or of pure barley, malt or wholesome yeast or rice, against the peace and dignity of the State. And the said John W. Jump, prosecuting attorney as aforesaid in and for the county and State aforesaid, under his oath of office aforesaid, further informs the court that one Adolphus Busch, president of, George K. Busch, general manager of, and J. D. Bowman, agent of the Anheuser-Busch Brewing association, a corporation, and the Anheuser-Busch Brewing Association, a corporation duly organized under the laws of the State of Missouri (said Anheuser-Busch Brewing Association being then and there the keeper and owner of a certain brewery for the manufacture and brewing of beer and other malt products within this State), on or about the 16th day of March, 1900, at and in the county of Pike and the State of Missouri, did then and there have in their possession certain beer, brewed and manufactured in the State of Missouri, and did then and there unlawfully and willfully have, receive and offer for sale and sell for the price of two dollars to one B. A. Pappenfort, George Anderson, eight gallons of beer, which said beer was then and there contained in a certain package, to-wit, a certain vessel in which beer is usually placed for sale, commonly called one-fourth barrel or keg containing eight gallons of beer, brewed and manufactured in the State of Missouri, which said package containing said beer so sold as aforesaid did not then and there at the time of the said sale thereof have placed upon the said package the label and certificate of the state inspector of beer and malt products of the State of Missouri certifying that said beer contained in said package or one-fourth barrel had then and there been inspected and made from wholesome ingredients, to-wit, made from pure hops, or the pure extract of hops or pure barley, malt or wholesome yeast or rice, against the peace and dignity of the State."

Then follows, in proper form, the prosecuting attorney's affidavit to the information.

Against the various relators who are interested

in these proceedings, there were about five thousand of such informations filed by John W. Jump, the prosecuting attorney of Pike county.

The petition in this cause presents, in substance, the following points:

"1.    That the corporations and their officers, relators herein, are residents of the city of St. Louis and manufacturers and brewers of beer in that city, and that said sales alleged to have been made in said informations, were made by them in that city.

"2.    That the local relators are residents of Pike county, Missouri, and are not manufacturers or brewers of beer and did not brew or cause to be brewed the beer described in said informations.

"3.    That Judge David H. Eby is judge of the Tenth Judicial Circuit of which Pike county is a part and that he has and is entertaining jurisdiction of the twelve hundred and three informations herein mentioned and same were set for trial in said circuit court at its June term, 1902.

"4.    That the information set forth in the pleadings is a true and correct copy of those pending against relators in said circuit court of Pike county.

"5.    That the said alleged informations do not charge these relators with any offense against the laws of the State of Missouri.

"6.    That from and after the 20th day of August, 1899, until the 15th day of April, 1901, the State of Missouri did not inspect beer and made no attempt to do so.

"7.    That on April 15, 1901, these relators complied with the provisions of an act passed by the General Assembly of the State of Missouri during the session of 1901, known as the Beer Compromise Act which said act was approved by the Governor on the date last aforesaid; and the relators and others paid in to the State Treasury for the benefit of the state revenue fund $191,250; and being ten cents on each and every barrel of beer of the capacity of thirty-one gallons and in the same proportion for any other

quantity of beer sold for consumption in the State of Missouri after September 20, 1899, and prior to March 19, 1901; and, that said payment of said money includes and pays the inspection fees on all the packages or cases of beer recited in the said twelve hundred and three alleged informations now pending in Pike county, Missouri, against relators.

"8. That at the time said compromise act was passed and approved and at the time relators complied with the provisions thereof and paid the said sum of $191,250 and the same was accepted by the State in full for fees provided by said act to be paid on account of beer theretofore made and sold in the State without having been inspected, there was no charge of violating the said Beer Inspection Law pending against these relators in the said circuit court of Pike county, Missouri, and said informations now pending against relators charge them with no offense against the laws of this State.

"9. That all parties who complied with the provisions of the Beer Compromise Act are relieved of all fines, penalties and forfeitures incurred, if any, by reason of non-compliance with the Beer Inspection Law, prior to the 19th day of March, 1901.

"10. That said Beer Inspection Law being article 4 of chapter 117 of the Revised Statutes of Missouri for 1899 is unconstitutional and void in that it violates section 28, article 4; and sections 3, 4, 6, 7, 8, and 11 of article 10, and section 8 of article 11; and section 53 of article 4; and section 4 of the Bill of Rights of the Constitution of Missouri; and further violates the fifth and fourteenth articles of amendment to the Constitution of the United States; and section 10 of article 1 of the Constitution of the United States.

"11. That by reason of the great multiplicity of suits, etc., and by reason of relators having no adequate way or remedy with which to meet the extreme conditions, and by reason of the injustice and oppression in causing relators to appear and defend against

Vol 170 mo—33.

said informations in the circuit court of Pike county, Missouri, and by reason of the want of jurisdiction of the said circuit court to try said causes, and by reason of said judge proceeding in excess of his authority, etc., and by reason of relators having complied with the terms of the Beer Compromise Act, and by reason of other matters set forth in relators' petition, relators ask that said provisional rule be made final and absolute.''

As the petition in full will accompany this opinion, it is thought unnecessary to do more for the present than to give a digest of it for the purposes of this discussion.

To the petition the respondent judge has filed this demurrer: ''Now comes respondent David H. Eby and demurs to the petition and writ in this cause for the following reasons:

''First. Because said petition and writ do not state facts sufficient to constitute a cause of action, nor facts sufficient to entitle relators to the relief prayed for in their said petition, or to any relief from this court, or to the issuance of any writ to prevent the respondent as judge of the Tenth Judicial Circuit of Missouri and as judge of the Pike Circuit Court from continuing in the discharge of his official duty and hearing and determining the misdemeanor charges referred to in said petition.

''Second. Because there is a defect of parties defendant in this, to-wit: That the State of Missouri is the plaintiff in all of the cases pending in said Pike Circuit Court brought by informations being filed by the prosecuting attorney of said county, and the said State of Missouri or its legal representatives being a party interested in the disposition of said causes is not made a party defendant, and that the relators improperly and contrary to the provisions of section 4450, Revised Statutes 1899, bring their suit at the relation of the State of Missouri when such suits should be brought by relators as plaintiffs.

''Third. Because the Supreme Court has no ju-

risdiction of misdemeanor cases except such derivative jurisdiction as it may acquire by appeal from the inferior courts of this State and it affirmatively appears from the petition of relators that they seek to be relieved from defending against the charge of having committed misdemeanors."

The Beer Compromise Act referred to and pleaded in the petition reads this way:

"Section 1. The Governor is hereby authorized and empowered to compromise and settle all demands by the State for inspection fees prior to March 19, 1901, arising under the Act of May 4, 1899, known as the beer inspection law, and being article 4 of chapter 117 of the Revised Statutes of 1899, upon payment into the State Treasury, to the credit of the State revenue fund, of ten cents for each and every barrel of the capacity of thirty-one gallons, and in the same proportion for any other quantity of beer sold for consumption in this State after September 20, 1899, and prior to March 19, 1901.

"Section 2. Every person, who shall comply with the provisions of section 1, of this act, and pay into the State Treasury, on or before the 15th day of April, 1901, the sum stated therein, upon beer sold for consumption in this state by him during the time stated in said section, shall be relieved from all fines, penalties and forfeitures incurred by him prior to March 19, 1901, under said act of May 4, 1899; and all prosecutions for such violations of said act prior to March 19, 1901, against parties who shall comply with section 1 of this act, are hereby barred: Provided, however, that this shall not apply to, or have any effect upon any prosecutions now pending in any of the courts of this State, but they shall be disposed of in the same manner as if this act had not been enacted.

"Section 3. Nothing herein contained shall be so construed as to relieve any party from any penalty, fine or forfeiture that may be incurred by him for any future violations of said act of May 4, 1899, nor shall the same interfere in any manner with the future en-

forcement of said statute; but it is only intended to provide for the adjustment of the inspection fees during the time the validity of said act has been under consideration in the courts.

"Section 4. It being important that a speedy adjustment and settlement of said matter be made in order that the costs and expenses of criminal prosecution may be avoided, an emergency has arisen within the meaning of the Constitution, and this act shall take effect and be in force from and after its passage and approval.

"Approved April 15, 1901." [Laws 1901, page 181.]

1. The third ground of the demurrer raises a preliminary question necessary to be decided at the outset of this investigation, by saying in effect that the charges in these twelve hundred and three informations being for *misdemeanors,* and this court having no appellate jurisdiction in that class of cases, hence, it has no original jurisdiction in such cases to award any of the original writs mentioned in section 3 of article 6 of the Constitution. This position was once taken by this court (Britton v. Steber, 62 Mo. 370); but only *once.* Since then, it has become an everyday practice to award to the inferior courts and hear and determine such original writs whether we have appellate jurisdiction in the causes, in which they are issued, or not. [State ex rel. Bayha v. Philips, 97 Mo. 331; Ex Parte Arnot Carter, 166 Mo. 604, and subseq. cas.]

The first ground of the demurrer is a general one, alleging that the petition does not state facts sufficient to constitute a cause of action nor to entitle relators to the relief prayed, etc. This, of course, challenges the petition in its totality, and equally of course it admits all facts which are well pleaded therein. The facts thus admitted by the demurrer are these: That the Anheuser-Busch Brewing Association was organized under the laws of this State, located in the city of St. Louis, Missouri, and engaged in the manufacture

and sale of beer.  That Adolphus Busch and George Busch were residents of said city, and that said sale mentioned in said information was made by them in the city of St. Louis.  That J. D. Bowman was a resident of the city of Louisiana in Pike county, Missouri, and is not a manufacturer or brewer of beer, and did not brew, or cause to be brewed, the beer mentioned in the information.  That the respondent judge is judge of the Tenth Judicial Circuit of which Pike county forms a part, and is entertaining jurisdiction of the twelve hundred and three informations aforesaid; that said informations had been set for trial at the June term, 1902, of said Pike Circuit Court, and that respondent, unless prohibited from so doing, would proceed to try the same, and that the information set forth in the petition is a true copy of those pending in the circuit court of Pike county.  That from and after the 20th day of August, 1899 (the day on which the Beer Inspection Act took effect) until April 15, 1901, the State of Missouri did not inspect beer, and made no attempt to do so.  That on April 15, 1901, relators complied with the provisions of the act known as the "Beer Compromise Act," which was approved by the Governor on that date, and that relators and others then and there paid into the State Treasury, etc., $191,250, which amounted to ten cents per barrel for every barrel of beer, etc., sold for consumption in the State of Missouri after September 20, 1899, and prior to March 19, 1901; and that such payment includes and pays the inspection fees on all the packages, etc., of beer mentioned in said twelve hundred and three informations, now pending in Pike county against relators.  That at the time said payment was made, the State of Missouri accepted the same in full for fees provided by said act to be paid for beer theretofore made and sold without inspection, and at that time there was no charge of violating said Beer Inspection Law pending against relators in the Pike Circuit Court.

2.  With these admissions before us, how stands

this cause as made by the pleadings and the statutory provisions already quoted?

The point is made on behalf of respondent that relators can not have prohibition because the lack of such jurisdiction has not been raised or pleaded in the lower court; and that this is *elementary law*. This view is frequently found expressed in text-books. [High Extr. Leg. Rem. (3 Ed.), sec. 773; 2 Spelling Inj. and Extr. Rem. (2 Ed.), sec. 1731.]

But this is not the law if it is to be taken as invariably true; true without variation or shadow of turning. In fact there are so many exceptions to the hackneyed rule, that the doctrine it announces is now received with many degrees of allowance and, as will presently appear, is not an absolute touchstone of jurisdiction. In short, the fact of having pleaded lack of jurisdiction in the lower court is not by any means *a sine qua non* of jurisdiction in the supervising court to issue the provisional rule.

In the celebrated case of Mayor of London v. Cox, 2 H. L. Cas. (Law Rep. loc. cit. 252), the opinion of Mr. Justice WILLES delivering the opinion of the other judges in the house of lords, in the year 1867, is exhaustive of the learning on the subject. That was a case appealed from the court of exchequer to the exchequer chamber, and finally to the house of lords. Before deciding it, the lords requested the opinion of the justices of the queen's bench on two questions, the second being as follows: "Whether the garnishees in the lord mayor's court could maintain an action for a prohibition without having pleaded in the lord mayor's court." To which the justices unanimously responded that *they could*. This was in accordance with the unanimous decision both of the court of exchequer and exchequer chamber, which was accordingly affirmed in the house of lords.

This opinion shows very conspicuously that erroneous decisions on the subject in hand have not infrequently been made in England, and in this country, of course, the number of mistakes about the matter

have not in all probability shown a greater falling off in numerical force.

The foundation for the writ of prohibition, as shown by the old books, consisted of: "1st, contempt of the crown, and disherison of it in taking on them judicial power where they have no right; 2nd, is a damage to the party." [Ede v. Jackson, Fortesc. 345.]

Elsewhere it is stated: "And the king's courts that may award prohibitions, being informed either by the parties themselves, or by any *stranger,* that any court temporal or ecclesiastical doth hold plea of that whereof they have not jurisdiction, may lawfully prohibit the same, as well after judgment and execution, as before." [2 Inst. 602, Com. Dig. Prohibition (E).]

In the Mayor's case, supra, it is said: "The application for total want of jurisdiction may be made either by the party or a stranger. In the answer of the judges to the third objection of the *Articuli Cleri* of 3 Jac. 1, it is laid down that 'the king's courts that may award prohibition being informed, either by the parties themselves or by any stranger, that any court, temporal or ecclesiastical, doth hold plea of that whereof they have not jurisdiction, may lawfully prohibit the same as well after judgment and execution as before.' The jurisdiction, therefore, does not, it seems, depend (for in the case of the crown or a stranger it can not depend) upon the course of the pleading. However, in the latest case in which this subject was considered, Re Foster (4 Best & S. 187), upon motion for a prohibition to the court of divorce after sentence, although it was laid down that upon the application of a stranger the interference of the court is discretionary, yet the right of a party aggrieved was fully recognized. 'I entirely concur,' said COCKBURN, C. J., 'in the proposition, that although the court will listen to a person who is a stranger, and who interferes to point out that some other court has exceeded its jurisdiction, whereby some wrong or grievance has been sustained, yet that is not *ex debito justitiae,* but a matter upon which the court may properly exercise its discretion,

as distinguished from the case of a party aggrieved, who is entitled to relief *ex debito justitiae* if he suffers from the usurpation of jurisdiction by another court.'"

And elsewhere in discussion of this subject, the eminent justice remarks: "The writ of prohibition at suit of a party is not, as it was thought to be by some eminent judges at the close of the seventeenth century (see per HOLT, C. J., Clay v. Snelgrave [1 Ld. Raym. 578], and the decision of the same judge in Wharton v. Pits [2 Salk. 548], overruled in Velthasen v. Ormsley [3 T. R. 315]), *in the discretion of the court.* This erroneous opinion may in part account for the fact that the cases reported to have occurred, in the seventeenth century and the early part of the eighteenth, under the head of prohibition, are not to be reconciled with one another, or with earlier and later authorities. The law upon this question of discretion is thus stated in the judgment of the Queen's Bench in Burder v. Veley [12 Ad. & E. 263]: 'If called upon we are bound to issue our writ of prohibition as soon as we are duly informed that any court of inferior jurisdiction has committed such a fault as to found our authority to prohibit, though there may be a possibility of correcting it by appeal. . . . The question then remains, what are the defects that authorize and require us to issue the writ of prohibition? The answer is, that they are in every case of such a nature as to show a want of jurisdiction to decide the case before them: (Gardner v. Booth [2 Salk. 548]). In whatever stage that fact is made manifest to us, either by the crown or by one of its subjects, we are bound to interpose.' The writ, however, although it may be of right, in the sense that upon an application being made in proper time, upon sufficient materials, by a party who has not by misconduct or laches lost his right, its grant or refusal is not in the mere discretion of the court, is not a writ of course, like a writ of summons in an ordinary action, but is the subject of a special application to the court upon affidavit, which application, and the proceedings thereupon, are now regulated by the Act of 1 Will. 4,

c. 21.   Before that act the proceedings were commenced by mere suggestion, which, with exceptions that do not include the present case, need not have been verified by affidavit.   The proceeding was *qui tam*, and it supposed a contempt in disobeying an imaginary precedent writ of prohibition.   To that course of proceeding only were the decisions relied upon, to the effect that the court will not interfere upon 'mere suggestion' before plea applicable.   They amount to this, that before plea the court, in its discretion, would not interfere upon a bare suggestion without an affidavit.''

In another place, in support of the last-cited remark, the learned justice quotes from two standard authors: ''The same law is laid down in Comyn's Digest ['Courts,' p. 15], where, after stating that the defendant may plead to the jurisdiction of the inferior court, it is said: 'So upon an *affidavit* of the fact he may have a prohibition without pleading to the jurisdiction.' ''   (Per 2 J. i. cont. Lut. 1026.)

''In Blackstone's Commentaries [vol. 3, p. iii], where an account of the practice before the statute is given, the 'grievance' to be remedied by prohibition is stated to be that of 'encroachment of jurisdiction, or calling one *coram non judice* to answer in a court that has no legal cognizance of the cause;' and no mention is made of its being necessary to plead.''

And the case cited also announces that where want of jurisdiction is apparent on the face of the proceedings, there prohibition will be granted by the supervising court, no preliminary step in the inferior court being *necessary;* and that at all events, the failure of the party applying to make objection or plea in the court below, does not *touch* the *question of jurisdiction.* There are many authorities on this point:   De Haber v. Queen of Portugal, 17 Q. B. 169; Farquharson v. Morgan, 63 L. J. Q. B. 474; 19 Am. and Eng. Ency. of Law, 273, note; Shortt on Prohibition, 459; Keough v. Grime, 53 N. E. 135; Havemeyer v. Superior Court, 84 Cal. 327.

In the somewhat recent case of State ex rel. v. Aloe,

152 Mo. 466, this court, speaking through VALLIANT, J., after citing with approval the case last mentioned, ruled that a failure to apply to the lower court as above indicated, did not bar this court from issuing a rule *nisi*, and taking jurisdiction of the cause.

3. Under the foregoing authorities, does this record present on its face the posture of there being an absolute want of jurisdiction in the lower court to try the one thousand, two hundred and three informations filed against relators in the Pike Circuit Court? That it does, we entertain no doubt; and these are our reasons therefor:

The demurrer admits all the substantial, material and traversable allegations of the petition. Those admissions so far as necessary to quote them, are the following: That respondent herein is judge of the Pike Circuit Court; that he is entertaining jurisdiction of the one thousand, two hundred and three informations aforesaid; that said informations had been set for trial at the June term, 1902, of said court, and that unless prohibited from so doing, respondent would proceed to try the same; that the information already copied is a true copy of those pending in the Pike Circuit Court; that on April 15, 1901, relators complied with the provisions of the act known as the "Beer Compromise Act," which was approved on that date; that on such date, relators and others paid into the State Treasury, etc., $191,250, which amounted to ten cents per barrel for every barrel of beer, etc., sold for consumption in the State of Missouri after September 20, 1899, and prior to March 19, 1901; that such payment includes and pays the inspection fees on all the packages, etc., of beer mentioned in said one thousand, two hundred and three informations now pending in Pike county; that at the time said payment was made, the State of Missouri accepted the same in full for fees provided by said act to be paid for beer theretofore made and sold without inspection, and at that time there was no charge of violating said "Beer Inspection Law," pending against relators in the Pike Circuit Court.

Here then we have presented a case where the State of Missouri, after passing an act for compromising and settling all fees, fines, penalties and forfeitures for beer sold in this State between September 20, 1899, and March 19, 1901; the payment of the necessary sum by relators on the day appointed, which sum included the fees due on said one thousand, two hundred and three informations, there being no informations pending against relators at the time of such payment; and yet relators are being prosecuted for the payment of some of the *very same fees* covered by said payment, and for recovery of some of the *very same fines* of which they were in express terms relieved by the act pleaded.

That compromise act, its terms having been complied with, as admitted by the demurrer, constituted *a contract* between the State and relators which the State could not impair without violating constitutional guarantees, by prosecuting relators for fees which they had already paid, and for fines from which they had already been released and relieved. In such case, relators, having, as the demurrer admits, bought their peace of the State on the State's own terms, the *State is estopped as well as all her agents*, to reopen and reagitate questions then and there definitely settled and finally determined.

In short, the act in question is an *amnesty or statutory* pardon. As observed by LEWIS, C. J., in Davies v. McKeeby, 5 Nev. loc. cit. 373: "But the word 'pardon' is generic, and includes every character of pardon. Amnesty is a general pardon granted to a class of persons by law or proclamation. The act in such case is as properly a pardon as if simply granted to an individual, by deed. Indeed, it seems to be generally conceded, in the United States, that the word 'pardon' includes amnesty. Thus, Mr. Webster defines the latter word to be, 'an act of oblivion; a general pardon of the offenses of subjects against the government, or the proclamation of such pardon.' So, Worcester de-

fines it as 'a general pardon, granted to those guilty of some crime or offense.' "

Discussing this subject and the variant meanings of the terms "amnesty" and "pardon," in reference to a statute of North Carolina, which exempted from punishment those who as Federals or Confederates, had, during the Civil War, done certain things, which, but for the statute, might have been punishable, READE, J., said: "Pardon and amnesty are not precisely the same. A pardon is granted to one who is certainly guilty, sometimes before, but usually after conviction. And the court takes no notice of it, unless pleaded, or in some way claimed by the person pardoned; and it is usually granted by the crown or by the executive. But amnesty is to those who may be guilty, and is usually granted by Parliament, or the Legislature; and to whole classes, before trial. Amnesty is the abolition or oblivion of the offense; pardon is its forgiveness. The act under consideration is both. . . . Ordinarily, a pardon must be pleaded at the trial or claimed after conviction, and a failure to do so is a waiver of its benefits. But a general act of amnesty and pardon must be taken notice of by the courts like any other public law. It can not even be waived by the persons embraced." [State v. Blalock, 61 N. C. (Phillips' Law) loc. cit. 247, 248; see, also, 2 Cyc. Law and Proc., p. 284, and notes.]

The "Beer Compromise Act," being an act of general amnesty, enacted by the Legislature in favor of the class to which relators belong, there was no manner of necessity for relators to plead it in bar of the prosecution in the lower court, since they could not have waived it if they would. And that act being a public law, the respondent judge was bound to take notice of it, and could not ignore it if he would.

And yet, notwithstanding the contract made by relators with the State in pursuance of an express law enacted for the purpose; notwithstanding a solemn contract made, a consideration paid and accepted, and legislative amnesty granted, the respondent judge

places himself on this record as intending to try rela-
tors on the very charges which the act, on compliance
with its terms, says shall be *barred.* We do not hesi-
tate to say that such intended course of conduct is in-
dubitably beyond the jurisdiction of the trial court, and
such fact is made apparent on the face of this proceed-
ing.

4. There is yet another ground upon which I
regard relators entitled to the relief they seek, and that
is I still deem the "Beer Inspection Law," as it is
commonly called, unconstitutional. Judge Cooley says:
"When a statute is adjudged to be unconstitutional,
it is as if it had never been. Rights can not be built
up under it; contracts which depend upon it for their
consideration are void; it constitutes a protection to
no one who has acted under it, and no one can be pun-
ished for having refused obedience to it before the
decision was made. And what is true of an act void
*in toto* is true also as to any part of an act which is
found to be unconstitutional, and which, consequently,
is to be regarded as having never, at any time, been
possessed of any legal force." [Cooley's Const. Lim.
(6 Ed.), 222.]

This view has been frequently followed by this
court: Ex Parte Smith, 135 Mo. 223; In re Flukes, 157
Mo. 125; State v. Julow, 129 Mo. 163; Ex Parte Neet,
157 Mo. loc. cit. 537; Ex Parte Slater, 72 Mo. 102; Ex
Parte Arnold, 128 Mo. 256; Ex Parte O'Brien, 127 Mo.
477; Ex Parte Craig, 130 Mo. 590; Ex Parte Lucas,
160 Mo. loc. cit. 266, et seq.

These cases proceed on the theory that an uncon-
stitutional law is no law at all, and consequently any
supposed crime designated and denounced in such un-
constitutional law *is no crime,* and therefore, the court
which tries a party for such *assumed* offense, trans-
cends its jurisdiction, and consequently such person is
entitled to his discharge on habeas corpus. [Ex parte
Smith, 135 Mo. loc. cit. 229.]

And it has been determined that if any given law
is unconstitutional, this, of itself will afford ground

for relief by prohibition. [Ex parte Roundtree, 51 Ala. 42; State ex rel. v. Young, 29 Minn. 474; 19 Am. and Eng. Encyc. Law (1 Ed.), 270, and cas. cit.]

Of course, if the law is unconstitutional which is made the basis of the proceedings, the case is one where it is obvious on the face of such proceedings that the trial court has no jurisdiction, and prohibition will consequently lie.

I am unable to distinguish the "Beer Inspection Law" from the act in regard to a State license tax on distilled liquors, recently passed upon by this court in State v. Bengsch, 170 Mo. 81, and held by a majority of this court to be unconstitutional, on the ground of violating both the State and Federal Constitutions by authorizing unequal taxation. And even if the fees demanded by the "Beer Inspection Law," of the manufacturer who manufactures beer in this State for sale in this State, be not regarded as a tax, yet no one can deny that that law by exacting no inspection fees from the manufacturer, who manufactures beer in this State to be exported outside of this State for sale, unjustly discriminates against the home manufacturer for home consumption, and thereby brings itself under the ban of the first section of the fourteenth amendment to the Federal Constitution by denying to such manufacturer "the equal protection of the laws," and this point was one on which paragraph 10 of the opinion in Bengsch's case was made to rest, and to which a majority of this court agreed. I think, therefore, that prohibition ought to go in this case for the further reason that the "Beer Inspection Law," is unconstitutional, and consequently, a violation of it could not amount to a *crime*.

5. It has, however, been urged by counsel for respondent that inasmuch as relators have a remedy by appeal, etc., in consequence of this, prohibition can not be granted. But this is an erroneous view, because in a case like this, where relators, if they could not have the relief prayed, would be compelled to go to trial in *twelve hundred and three* cases; then, if defeated, would have to give bond in each case, take an appeal

in each case, pay for a transcript in each case, pay a docket fee in each case of ten dollars, such fees amounting in the aggregate *to twelve thousand and thirty dollars,* as well as counsel fees in each court, consequently, it must be conspicuously obvious that such appeals, although available, would be "inadequate to meet the emergencies of the case, or afford the redress to which the injured party is entitled." [2 Spelling Inj. and Extr. Rem. (2 Ed.), sec. 1725, and cas. cit.]

The final point is insisted on that this proceeding should have been instituted by relators in their own names, as plaintiffs, and not on the relation of the State of Missouri, and section 4450, Revised Statutes 1899, is cited in support of this position. But that section is only applicable in the *circuit* courts, and not to this court when original proceedings are instituted here. Proceedings of this sort which originate in this court, are governed not by the code, but by the general law on the subject. [Ib., sec. 4456; State ex inf. v. Beechner, 160 Mo. loc. cit. 86.]

The premises considered, and being mindful of our duty to exercise our superintending control over all inferior courts and keep them within the bounds of their rightful jurisdiction, we make the provisional rule absolute. *Burgess, C. J.,* and *Robinson, J.,* concur *in toto,* and still adhere to their dissenting views in the Bixman case. *Marshall, J.,* expresses no opinion as to the constitutionality of the "Beer Inspection Law," but concurs in the other portions of the opinion. *Brace, Gantt* and *Valliant, JJ.,* do not agree that the "Beer Inspection Law" is unconstitutional, as stated in paragraph 4 but adhere to their views as expressed in the Bixman case; they, however, concur in the residue of the opinion.