THE STATE ex rel. HAUGHEY et al. v. RYAN, Judge, et al.

**In Banc, February 24, 1904.**

1. **PROHIBITION.** The right to make the preliminary rule of prohibition absolute must stand or fall upon the petition presented by relator.

2. ————: **Completed Act.** The writ of prohibition can not issue to prohibit an act already performed. The members of the State Board of Arbitration should not be joined in a writ of prohibition to prohibit the circuit court from committing relators for contempt for their refusal to testify, if the members of the board have already applied to the court for an attachment for relators because they refused to testify.

3. ————: **Must Be Cause Pending: Jurisdiction.** There must be a cause pending before the court before a writ of prohibition will issue to prohibit the court from assuming jurisdiction. An application to prohibit the court from committing relators for contempt, which expressly alleges that no citation has been issued to them, and in which there is no allegation that the court will proceed to dispose of the cause unless prohibited from so doing, does not state facts sufficient to authorize the writ to issue. The writ can not be used to prevent the institution of an action or proceeding.

4. ————: ————: **Application for Citation.** The fact that the Board of Arbitration has filed in court an application that relators be cited for contempt for refusal to testify before the board does not alone confer jurisdiction of the court over the persons of relators. The Supreme Court will not assume that a citation will issue, or, after having issued, that it will be served.

Prohibition.

RULE DISCHARGED.

*Walter H. Saunders* for relators.

The application for a writ of prohibition in this case is not premature because the board and court have taken every step possible unde the act, save to actually put the relators in jail. When that occurs, some other remedy than the one selected will have to be invoked. The constitutional grounds upon which the statute has been attacked in this case raise a fundamental jurisdictional question, which can be urged at any stage of the proceeding, which can not be waived and which makes any discrepancy as to the facts immaterial. Henderson v. Henderson, 55 Mo. 544; Graves v. McHugh, 58 Mo. 500; Davis v. Jacksonville, S. E. Line, 126 Mo. 75; Bray v. Marshall, 66 Mo. 123; Parker v. Zeisler, 139 Mo. 299; Johnson v. Detrich, 152 Mo. 254. In contempt proceedings and quasi-criminal proceedings of an *ex parte* character, it is not necessary to first file a plea to the jurisdiction of the inferior court before invoking the aid of the appellate court in an application for the writ of prohibition. Railroad v. Wear, 135 Mo. 264; People v. Carrington, 5 Utah 521; State v. Wilcox, 24 Minn. 243. In State ex rel. v. Eby, 170 Mo. 497, where the prosecution of informations under the beer act was prohibited, no plea to the jurisdiction of the trial court had been filed. The writ was sustained on purely constitutional grounds. By the trend of modern decision this writ is the preferred method of testing constitutional questions. If additional reasons are needed, the writ is unquestionably proper because: (1) One of the respondents is a judge of the circuit court; (2) The act confers judicial powers upon the board, which it is seeking to exercise; (3) Section 4448, Revised Statutes 1899, provides that "the writ of prohibition shall be granted to prevent usurpation of judicial power, and in all cases," where now applicable by law. The writ, under this

statute, lies, whenever power judicial in character is usurped, and not only when usurped by a judicial body.

*Sam. B. Jeffries,* Assistant Attorney-General, with whom is *Edward C. Crow,* Attorney-General, for respondents.

(1) Relators should have filed or made an objection to the jurisdiction of the circuit court of the city of St. Louis, in that court, before the proceeding in prohibition was instituted in the Supreme Court. Relators made no objection to the jurisdiction of the circuit court of the city of St. Louis. The jurisdiction of that court remains unchallenged, so far as any attempt has been made to obtain relief therefrom. No opportunity having been given Judge Ryan, in his judicial capacity, to pass upon the rights of relators in the matter complained of, they can not obtain relief here. The jurisdictional question raised should have been presented to the inferior court before undertaking to obtain a writ of prohibition from a higher court. People v. Wood, 21 N. Y. (App.Div.) 245; People v. Russell, 49 Barb. 351; Ex parte Hamilton, 51 Ala. 65; State ex rel. v. Gill, 137 Mo. 681; Hudson v. Judges, 42 Mich. 239; Railroad v. Superior Court, 59 Cal. 471. (2) Jurisdictional questions only will be determined by proceedings in prohibition. The only questions involved in proceedings at prohibition are: First. Has the inferior tribunal exercised and is it exercising jurisdiction which it does not possess? Second. After having jurisdiction over the subject-matter, has it exceeded its lawful power? McIndery v. City, 17 Colo. 304; Helms v. Vaughn, 84 Va. 693; State v. Withrow, 108 Mo. 1; State v. Fox, 85 Mo. 61; State v. Keys, 75 Wis. 288; Ex parte Detroit Railroad Company, 104 U. S. 519. In proceedings of this character the merits of the action complained of will not be considered by the Supreme Court. In re Fassett, 142 U. S. 479; Ex parte

Penn., 109 U. S. 174; Ex parte Slayton, 105 U. S. 451; Goddard v. Superior Court, 90 Cal. 101; Ex parte Smith, 23 Ala. 94.

FOX, J.—This proceeding is predicated.upon an application by relators for a writ of prohibition. The preliminary rule was issued, and the cause is now submitted to this court for final determination, upon motion, by the Attorney-General, representing respondents, to dismiss the proceeding.

The purposes sought by this application are fully disclosed by the petition; hence, to intelligently comprehend the controverted questions, we must look to the petition, which is as follows:

"*To the Honorable, the Supreme Court of Missouri*:

"Come now the said Micheal Haughey, Aug. Bensieck, M. J. Cullen, Arthur Donnelly, C. M. Herman, F. F. Herold, J. D. Marshall, and Wm. F. Mulhall, and give the court to understand and be informed that all of said relators are and were, at all times hereinafter stated, citizens of the State of Missouri and residents of the city of St. Louis, and engaged, either as individuals or as members of firms or corporations, in the livery business in said city; and that said E. S. Garver, Ford A. Allen and Thomas M. Jenkins claim that, by appointment of the Governor of the State of Missouri, they constitute and did constitute, at all times hereinafter stated, the Missouri State Board of Mediation and Arbitration attempted to be created by S. B. 112, of the Laws of Missouri, 1901, page 195, approved March 7, 1901, entitled, 'Labor: Board of Mediation and Arbitration. An Act to repeal article 2 of chapter 121, of the Revised Statutes of Missouri, 1899, and to create a state board of mediation and arbitration, for the settlement of differences between employers and employees, and to define the powers and duties of said board, with an emergency clause,' as amended by H. B. 505, Laws of Missouri, 1903, page 218, approved March 23, 1903, entitled,

'Labor: Mediation and Arbitration. An Act to repeal section 5 of An Act entitled "An Act to create a state board of mediation and arbitration," approved March 7, 1901, and to enact three new sections in lieu thereof,' and, as said board, assumed jurisdiction, as hereinafter stated; and that said H. F. Childers claims and claimed to be the secretary of said board by virtue of the appointment of said board, at all times hereinafter stated; that the Honorable O'Neill Ryan is and was, at all times hereinafter stated, a judge of the circuit court of the city of St. Louis, sitting in room 4 of said circuit court, and, as such, assumed jurisdiction, as hereinafter stated. That, on December 23, 1903, two pretended subpoenas, both purporting to be signed by said E. S. Garver, as chairman of said board, and by said H. F. Childers, as secretary of said board, one of which was addressed to said Michael Haughey, J. D. Marshall, Aug. Bensieck, and Arthur Donnelly, and the other of which to said Wm. F. Mulhall, F. F. Herold, C. M. Herman and M. J. Cullen, were issued and placed in the hands of the sheriff of the city of St. Louis, by which said subpoenas all of said relators were commanded to appear before said board in the 'Court of Appeals room at courthouse in county and State aforesaid,' on December 29, 1903, at 10 a. m., 'then and there to testify and the truth to say in a certain inquiry now being made by said board, concerning a threatened strike, or lockout, of employees of St. Louis Liverymen's Association.' That, prior to the issuance of said pretended subpoenas, said board had made no effort whatever, as required by section 5 of said alleged act, as amended, to place itself in communication with 'the employees of the St. Louis Liverymen's Association,' and said association, or with the employees of any liveryman in said city, and said liverymen, for the purpose of endeavoring 'by mediation to effect a settlement' between them. That the return on the first of said subpoenas is as follows:

" 'RETURN. I hereby certify that I served the within subpœna in the city of St. Louis on the 26th day of December, 1903, by reading the same to the within named Michael Haughey, J. D. Marshall, Arthur Donnelly and Aug. Bensieck.

" 'JOSEPH F. DICKMANN, Sheriff.

" 'Bogy, Noonan and Romansky.' "

That the return on the second of said subpœnas is as follows:

" 'RETURN. I hereby certify that I served the within subpœna, in the city of St. Louis, on the 24th day of December, 1903, by reading the same to the within named Wm. F. Mulhall, F. F. Herold, M. J. Cullen, on December 26, and C. M. Herman on December 26th.

" 'JOSEPH F. DICKMANN, Sheriff.

" 'C. N. Winke Phelan.'

"That said returns are null and void on their face.

"That as to Aug. Bensieck the only attempt at service was for someone, unknown to said Bensieck, to state over the telephone that he was reading to him a paper, which he never saw, and which he has no means of identifying.

"That certified copies of both said subpœnas and the returns thereon, and of the order for the attachment indorsed on one of them, as hereinafter stated, are hereto attached and marked Exhibits A and B.

"That on December 29, 1903, said relators are informed and believe that said board was not in session, because of the absence of said secretary.

"That on December 30, 1903, said relators appeared before said board by their attorney, for the sole purpose of insisting that they had not been regularly summoned and could not be compelled to testify, and that said board had no jurisdiction in the premises.

"That on December 30, 1903, said board applied to the Honorable James R. Kinealy, a judge of said circuit

court, to issue an attachment against said Haughey, Marshall, Bensieck and Donnelly, and that said judge attempted to order said attachment to issue, as shown by his order, indorsed on the certified copy of said pretended subpœna, hereto attached and marked 'Exhibit A,' said order being as follows:

" 'December 30, 1903.

" 'Let attachments issue for above witnesses, returnable December 31st, at 2 p. m. J. R. K.'

"That, thereupon, a pretended joint attachment was issued against all of said relators, commanding them and each of them to appear before said board 'in the room of the Court of Appeals, in the courthouse in the city of St. Louis, on the 31st day of December, 1903, at 2 o'clock p. m., then and there to testify and the truth to say in a certain inquiry now being made by said board, concerning a threatened strike, or lockout, of the employees of the St. Louis Liverymen's Association,' all of which will more fully appear from a certified copy of said pretended attachment and the return thereon, hereto attached and marked 'Exhibit C.'

"That on December 31, 1903, said relators, in accordance with the terms of said pretended attachment, were brought before said board, at the time specified therein, by said sheriff, and, thereupon, said relators filed with said board through their attorney, a paper, a certified copy of which is hereto atached, marked 'Exhibit D,' in which they stated that they were only present in response to said subpoenas and the attachment thereon, and expressly disclaimed that there was any existing controversy between their employees and themselves, and expressly disclaimed that they were present for the purpose of submitting any matter to arbitration, and further stated that none of them represented the so-called 'St. Louis Liverymen's Association,' the alleged trouble between which and its employees was proposed to be investigated by the said board. That all of said facts, set out in said paper, were and are still true.

"That said relators announced through their said attorney to said board that they were not unwilling to testify as to any strictly relevant and pertinent matters relating to said proposed investigation, provided all their legal and constitutional rights were preserved.

"That said board then announced that it would proceed in the matter.

"That, thereupon, one Charles Summers, the attorney for 'Carriage Drivers' Local Unions, Nos. 405 and 526,' announced that his said clients were ready to submit said matter to the arbitration of said board, which said board accepted said matter as submitted by said unions. That said attorney stated that the subject-matter of dispute arose out of a proposed contract between 'Carriage Drivers' Local Unions, Nos. 405 and 526, and the Liverymen of St. Louis and vicinity,' to take effect January 1, 1904, and continue until January 1, 1906, which said contract had been proposed by said local unions. That, thereupon, he filed with said board said proposed contract, a copy of which is attached hereto and marked 'Exhibit E,' stating that he did so to show the subject-matter of the alleged controversy, which facts also appear from said secretary's certificate thereon.

"That said proposed contract, if executed, would be null, void and against public policy and good morals and intolerable in a free country, because of its discrimination against non-union men, and said board has no right to investigate any trouble that might arise from the refusal to execute such a contract. That said board also had no jurisdiction because there was no complaint that any existing contract between any liverymen or their employees in said city had been violated, and that it is not within the province of said board to investigate trouble that might arise from the refusal to execute a proposed contract, to take effect at some future time. That whether said proposed contract would or would not be executed could not be determined until any existing

contracts might have expired and the time, at which said proposed contract should take effect, should have arrived. That said board was not sitting for the purpose of investigating any actual or threatened trouble with said unions, as shown by said subpœnas and attachment.

"That said Summers then put one William Reynolds, claiming to be the business agent of said local union, No. 405, on the stand to testify to certain alleged facts in connection with said proposed contract, and proceeded to examine him.

"That said attorney for said relators, after the examination of said Reynolds in chief, undertook to cross-examine him, but was not permitted by said board to elicit facts which said attorney regarded as material to said investigation. That said local unions are neither employers of drivers nor employees of liverymen, and that said attorney insisted before said board, that no matter, as to which said local unions claimed to be concerned as parties, could be investigated, or arbitrated, by said board, and that said local unions could not be recognized by said board under said act as parties to any threatened or existing controversy, and that said proceeding by the terms of said subpœnas did not extend to them. That, owing to the attitude of said board, said attorney felt constrained, while said Reynolds was on the stand, to withdraw from any further active participation in said proceeding and to advise said relators to do the same; that both of them did withdraw. That, previous to said time, said attorney had stated to said board that said relators were not unwilling to testify in said proceeding as to strictly relevant and pertinent matters, providing all their legal and constitutional rights were preserved; that said board never attempted to place said relators, or any of them, on the stand to testify in said proceedings. That said board continued with the examination of said Reynolds after the withdrawal of said relators and their attorney.

"That there is no such association in the city of St.

Louis as the so-called 'St. Louis Liverymen's Association,' That there is an association in said city, duly incorporated under the laws of the State of Missouri, entitled 'St. Louis Undertakers,' Embalmers' & Liverymen's Association,' of which said corporation said relators, firms, or corporations, are members. That no effort was made by said board to summon said corporation nor was it alleged that said corporation, or any of its members, had any existing or threatened trouble with their employees.

"That on the 6th day of January, 1904, said board, through its attorney, filed a petition in said circuit court, which was assigned to room 4 thereof, presided over by the Honorable O'Neill Ryan, one of said respondents, praying that said relators be cited and punished for alleged contempt of said alleged writ of attachment, all of which will more fully appear by a certified copy of said petition hereto attached, marked 'Exhibit G.' That said citation for contempt has not yet been issued. That said relators expressly deny that the facts attempted to be set out in said petition are accurately set forth.

"That said statute, under which said board and said court claim to act, is wholly null, void and unconstitutional, and that both of them are entirely without jurisdiction for the following reasons:

"1. That said statute contained more than one subject, and that the objects thereof were not clearly expressed in its title, which is in conflict with section 28, article 4, of the Constitution of Missouri.

"2. That said statute is in conflict with section 4, article 2, of the Constitution of Missouri, which is the Bill of Rights, in that said statute attempts to deny the natural right of liberty and the enjoyment of the gains of industry.

"3. That said statute is in conflict with section 20, article 2, of said Constitution, in that it attempts, by a system of investigation and arbitration, to take private

property for private use, which said section 20 forbids, either with or without compensation.

"4.  That said statute is in conflict with section 10, article 2, of said Constitution, which prescribes that courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay, in that said statute attempts to confer upon said board the power to exercise judicial functions and to determine sacred rights of property and liberty in a proceeding wholly extrajudicial.

"5.  That said statute is in conflict with section 53, article 4, of the Constitution of Missouri, which provides that the General Assembly shall not pass any local or special law regulating 'labor, trade, mining or manufacturing,' because said statute, by section 6 thereof, only applies in cases where 'ten or more employees' are involved in a grievance, or dispute; that said number, fixed as a prerequisite to the jurisdiction of said board, is wholly arbitrary, and not based upon any considerations of right or justice.

"6.  That said statute is in conflict with section 28, article 2, of the said Constitution, as amended at the general election, held on the Tuesday following the first Monday in November, 1900, in that said statute attempts to authorize said board to determine disputes and grievances without the intervention of a jury, to which said relators are constitutionally entitled by said section 28.

"7.  That said statute is in conflict with section 30 of said article 2 of the Constitution, in that it attempts to deprive said relators of liberty and property without due process of law.

"8.  That said statute is in conflict with section 31 of said article 2, which prohibits either slavery or involuntary servitude in this State, except as a punishment for crime, whereof the party shall have been duly

convicted, because said statute attempts to give said board the right to determine questions of employment, to compel employees to work for employers, and employers to hire employees, and to fix the terms and conditions of said employment, even though one of said parties may decline to submit said matter to the arbitration of said board.

"9.    That said statute is in conflict with section 32 of article 2 of said Constitution, which provides that the enumeration in this Constitution of certain rights shall not be construed to deny, impair or disparage others retained by the people, because said statute attempts to deprive said relators of their inherent and inalienable right to employ whom they please, and upon such terms and conditions as they may see fit.

"10.    That said statute is in conflict with section 1, article 6, of said Constitution, in that it attempts to vest judicial power in said board, which can not be reviewed in any manner.

"11.    That said statute is unconstitutional, null and void, in that it attempts to provide by section 5 thereof that said board may issue subpœnas to any sheriff, constable or police officer, who shall forthwith serve or post the same as may be required, and make due returns thereof according to directions, and that for such service said officer shall receive the fees allowed by law in similar cases from the treasury of the county, or city 'wherein the controversy to be arbitrated exists,' upon a warrant signed by the president of said Board of Mediation and Arbitration, and that witnesses shall receive the same compensation as witnesses in courts of record, which shall be paid in the same manner as said officers above mentioned.

"That said statute is unconstitutional, in that it attempts to saddle the cost of arbitration upon the county, or city, wherein the controversy happens to exist, even though one party declines arbitration, and makes no provision whatever for the payment of either officers or

witnesses for attendance, where an investigation is merely being made, and no arbitration, either submitted to by one or both parties under consideration; that said statute, in said first respect, is taxation without representation, in conflict with said Constitution of Missouri, and, in the respect in which it attempts to require service of officers and attendance of witnesses without compensation, it is taking private property without any compensation whatever, which is in conflict with sections 20 and 21 of article 2 of the said Constitution.

"12.    That said statute is in conflict with section 1, article 13, of the amendments to the Constitution of the United States, which forbids slavery, or involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, in that said act attempts to compel employers to hire employees to work for employers upon such terms and conditions as said State Board of Mediation and Arbitration may determine.

"13.    That said statute is in conflict with section 1, article 14, of the amendments to the Constitution of the United States, in that said act is an attempt by said State of Missouri to authorize said board to deprive persons within said State of liberty and property without due process of law, and is an attempted denial to persons within said jurisdiction of the equal protection of the law.

"Said relators further state that said proceeding, instituted and followed as aforesaid, is a direct encroachment upon the authority and jurisdiction of this court, and is in contempt of this Honorable Court, its authority and dignity; and under the Constitution and laws of this State it is made the care of this court that said board and said circuit court, as well as all other inferior courts, keep within the bounds and limits of the several jurisdictions, prescribed to them by the laws of this State.

"Said relators further show to this Honorable

Court that, in said proceeding against them, said board and said court are both acting in excess of their juris-- diction and powers, and that it is unjust and oppressive that they should be compelled to appear before said court and defend themselves against said alleged charge of contempt. That, under the circumstances herein-before set forth, your relators implore the aid of this Honorable Court, and pray that they may have a writ of prohibition directed to said E. S. Garver, Ford A. Allen and Thomas M. Jenkins, composing said Missouri State Board of Mediation and Arbitration, and to said H. F. Childers, secretary thereof, and also directed to the Honorable O'Neill Ryan, Judge of the said circuit court of the city of St. Louis, prohibiting all of them from taking any further cognizance of said alleged contempt proceeding against your relators.

"Wherefore, your relators pray this Honorable Court to award them such relief as may be appropriate in the premises, and will protect them against the hardships, injustice and oppression of being compelled to make defense against said alleged contempt proceeding."

The respondents, in obedience to the commands of the preliminary rule issued upon the petition, appeared before this court, and instead of a formal return to the alternative writ, present and file their motion to dismiss, which is as follows:

"Now come respondents and move the court to dismiss this cause and state the following reasons therefor:

"First. Because the petition shows on its face that no objection was or has been made or filed in the circuit court of the city of St. Louis by relators, questioning the jurisdiction of said court in the matter there pending and complained of.

"Second. Because the petition for writ of prohibition herein was prematurely filed by relator.

"Third. Because the petition shows on its face

that the relators' property and contractual rights, under the Constitution have not been disturbed.

"Fourth. Because the facts set up in the petition, if considered, would require this court to pass upon the merits of the action pending in the circuit court of the city of St. Louis, wherein the merits of the action complained of can not be considered in a proceeding at prohibition.

"Fifth. Because the petition is insufficient in law.

"Sixth. Because the circuit court of the city of St. Louis is a court of general jurisdiction and has jurisdiction over the subject-matter of the proceeding complained of by relators."

OPINION.

It is made apparent, from the allegation in the petition, that relators seek by this proceeding to procure an absolute rule, prohibiting Judge O'Neill Ryan from disposing of what is termed a contempt proceeding against relators.

The preliminary rule issued in this cause was predicated upon this petition, no supplemental petition being presented as a basis or authority to make the rule absolute. We are confined to the allegations of the same pleading.

This controversy springs from an effort of the corespondents, the board of arbitrators, to settle a threatened strike by the employees of certain liverymen in the city of St. Louis. Under the law which is assailed in this proceeding, the Board of Arbitrators are authorized "to subpœna as witnesses anyone connected with the department of business affected, or other persons whom they may suspect of having knowledge of the matters in controversy or dispute, and any one who keeps the records of the wages earned in such department, and examine them under oath touching such matters and re-

quire the production of books and papers containing the record of wages earned or paid.''

From the record before us, it appears that the Board of Arbitrators contend that the relators were subpoenaed in pursuance of the authority vested in such board and that they willfully failed and refused to obey the commands of the subpoena, and to enforce obedience to such process, the board resorted to the provisions of section 5a, Laws of 1903, page 219, which provides:

''In case any person shall willfully fail or refuse to obey such subpoena, it shall be the duty of the circuit court, or any judge thereof in any county, upon the application of said board, to issue an attachment for such witnesses and compel such witnesses to attend before the board and give his testimony upon such matters as shall be lawfully required by said board; and the court shall have power to punish for contempt as in other cases of refusal to obey the process and order of such court.''

In pursuance of this provision, the board made application to the circuit court of the city of St. Louis for an attachment for the relators, which was issued under the direction of Judge Kinealy, and they were brought before the board and the relators refused to obey the order in the attachment, and still refused to testify. The record discloses that the relators were not held in custody under said attachment, nor were they taken before the court to answer for contempt in refusing to obey it; but, it appears, that they simply withdrew from the room where the arbitration board was holding its court, and, so far as the petition discloses, have never been disturbed for their refusal to obey the order of the circuit court. It appears from the petition and record, that the Board of Arbitrators filed an application in the office of the clerk of the circuit court of the city of St. Louis, praying the court to issue its citation to the relators, to appear and show cause why they should not be dealt with for contempt, for disobedience

to the order of attachment.   The petition expressly avers that no citation has yet been issued.

The right to make the preliminary rule of prohibition must stand or fall upon the petition as presented by relators.

At the very inception of the investigation of the questions presented by this record, we are unable to find any reason for making the members of the Board of Arbitrators parties to this proceeding.   Their powers, so far as the contempt proceeding is concerned, are at an end.   They caused the process to issue for the appearance of the relators before them as witnesses; upon their refusal to testify, they applied for the attachment, which was issued upon the refusal to obey the order of the attachment; they made application to the circuit court to have citations issued. The writ of prohibition can not reach those acts by the Board of Arbitration, for they are complete, and it is illogical to issue a writ to prohibit an act that has been performed.

Everything that they were authorized to do under the law, so far as the contempt proceeding is concerned (and that is the proceeding sought to be reached by this petition), has been done.   They have no judicial or quasi-judicial functions to perform in connection with the contempt cause, and in the present status of that proceeding  they have absolutely nothing to do with it.

It may be said that, having filed the application for the citation, they are interested in the prosecution of it. This is true, and they may incidentally be called as witnesses in the final determination of it; but that, by no means, makes them necessary or proper parties to this proceeding. When the division of the circuit court, over which Judge Ryan presides, obtains jurisdiction of the contempt proceeding, it is the only tribunal to which the writ of prohibition should be addressed.   The writ of prohibition does not issue to prohibit the commencement of a proceeding, but it is an extraordinary writ, and its special office is, after a court has acquired jurisdiction

and the cause is pending, if the court has no jurisdiction or is about to exceed its lawful powers, to prohibit it from disposing of the cause or from exceeding its lawful authority.

The question first to be settled in this proceeding is narrowed down simply to this: under the facts alleged in the petition, is there a cause pending before Judge Ryan, of which he has assumed jurisdiction, when, under the Constitution and laws of the State, he has none? It will be observed, upon examination of the petition, that it expressly alleges that in this contempt proceeding no citation has been issued to the relators, and it will be further noted that there is an absence of any allegation that Judge Ryan will proceed to dispose of the cause unless he is prohibited from so doing. Before this extraordinary writ will be issued, to prohibit a court of general jurisdiction from disposing of a cause, it should clearly appear that the court has assumed jurisdiction of it, and will proceed to dispose of it, unless prohibited from doing so. In other words, there must be a cause pending before the court upon which the writ can operate. The assumption of jurisdiction, in order to authorize the issuance of the writ sought in this cause, contemplates not only an assumption of jurisdiction over the subject-matter, but also over the person. This rule finds support in 23 Am. and Eng. Ency. Law (2 Ed.), p. 197, wherein we find in the text the rule stated thus:

"The writ can only issue where there is some court or person to whom it may be addressed and against whom it may be enforced, and there must be some pending cause in the court sought to be restrained upon which the writ of prohibition may operate."

The same authority, treating of the same subject, makes this clear announcement of the conditions which must exist, to authorize the issuance of the writ. It is said:

Vol 180 mo—4

"It must clearly appear that the inferior tribunal is actually proceeding or is about to proceed in some matter over which it possesses no jurisdiction, and when such intention is not clearly shown the writ will be refused. It will not be presumed that the inferior tribunal will act in a matter over which it has no jurisdiction. [Vol. 23 (2 Ed), p. 206.]

The rule is most aptly stated in Haldeman v. Davis, 28 West Va. l. c. 327. It was said in that case:

"In order to authorize the writ, the petition must clearly show that the inferior tribunal is about to proceed in a matter over which it has no jurisdiction. It will not issue when the facts do not affirmatively make the jurisdiction clear and distinct. It can only operate upon a pending suit or proceeding, and can not be used to prevent the institution of an action or proceeding."

Applying the rule as herein stated, we are confronted with this question: is the contempt proceeding, of which relators complain, pending before Judge Ryan? The allegations of the petition must furnish the answer, for upon the petition before us, our action must be based. Upon an examination of the petition, the conclusion can not be avoided that the circuit court of the city of St. Louis has not assumed jurisdiction of the contempt proceeding. So far as the disclosures of the petition are concerned, it only appears that a petition or application by the board of arbitration is on file in the office of the clerk of the circuit court.

No jurisdiction of the persons of the relators has been obtained; the mere declaration of the board, upon refusal of relators to obey the order of attachment, that it would proceed against them, or from the fact that the board filed a petition or application, praying for a citation, does not confer jurisdiction. This court will not presume that a citation will issue, or after having issued, that it will be served. Until it affirmatively appears that a citation has been issued, and service had

upon the relators, there is no cause pending before Judge Ryan, which would authorize this court to issue its writ to prohibit him from trying it.  If, after the filing of this petition, a citation issued, and was served, then, upon due notice, a supplemental petition might be filed; but, as the cause is now presented, our consideration is confined to the petition, upon which the preliminary rule issued.

Our attention is directed by learned counsel for relators to State ex rel. v. Eby, 170 Mo. 497, as supporting the contention that this application is not prematurely made.  An examination of that case will demonstrate that the petition upon which it was predicated brought it directly within the rule, as announced in the one before us.  The allegations, as to the assumption of jurisdiction by Judge Eby (which are absent in the case at bar), were as follows:

"And your relators further give the court to understand and be informed and show that notwithstanding the foregoing premises the said 1,203 cases under said alleged informations against these relators have been set for trial in the circuit court of Pike county, Missouri, beginning on the 9th day of June, 1902, and unless prohibited from so doing the said circuit court will proceed with the trial of said causes, and your relators show to the court that it is in the highest degree unjust and oppressive that they should be compelled to appear and defend against each and all of said alleged informations at the said county of Pike and State of Missouri."

While that case fully supports the proposition that it is not necessary to plead to the jurisdiction of the court, as a condition precedent, before applying for a writ of prohibition, yet it in no way conflicts with the conclusions reached in this cause, that before the writ will issue, it must affirmatively appear that the cause is pending before the court sought to be prohibited.

It may be said that this is a technical view of this

cause; that the citation will be issued and served, and the court should determine the questions involved. We will say, in response to that suggestion, that where it clearly appears that the constitutional rights of any person are in danger of being invaded by the action of inferior courts, not possessed of jurisdiction of the cause, this court will not hesitate to exercise its superintending control provided by the Constitution over such courts, and will promptly issue its process to prevent such unauthorized action. But, on the other hand, circuit courts are courts of general jurisdiction and application for writs of prohibition against their action should be and will be strictly scrutinized, and this court will not set the precedent of encouraging applications for extraordinary remedies, by anticipating that a cause will be pending and issue its process in advance of the actual pendency of the proceeding. As was said by Mr. Justice MILLER in United States v. Hoffman, 4 Wall. l. c. 162:

"We are not prepared to adopt the rule that we will issue a writ in a case where its issue is not justified, for the sole purpose of establishing a principle to govern other cases."

The application for this extraordinary writ must affirmatively state every fact upon which to base the authority for issuing it.

This writ will only issue when there is a clear necessity for it and it appearing from the petition that the circuit court has not acquired any jurisdiction over the persons of relators, as long as that condition exists neither their liberties nor rights of any character will be disturbed. Hence, we have reached the conclusion that the ground assigned in the motion of the Attorney-General, that this application was prematurely made, is well taken, and we decline to make the preliminary rule absolute, and it is discharged.

All concur.